FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 12, 2024

González C.J.
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 12, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ENVOLVE PHARMACY SOLUTIONS, INC., | No. 101845-2 |
| Respondent, | EN BANC |
| v. | Filed: December 12, 2024 |
| DEPARTMENT OF REVENUE, | |
| Petitioner. | |

GORDON McCLOUD, J.—RCW 82.04.320 exempts certain Washington businesses from the business and occupation (B&O) tax based on gross receipts that most Washington businesses have to pay. It states in relevant part, "[The B&O Tax Chapter] does not apply to any person in respect to insurance business upon which a tax based on gross premiums is paid to the state . . . ." RCW 82.04.320.[1]

---

[1] The legislature amended but did not substantively change the text of former RCW 82.04.320 (1961) when it adopted RCW 82.04.320(1) (2021). Because these amendments do not impact the statutory language relied on by this court, we refer to the current applicable version of the statute.

Centene Corporation's two subsidiaries, Envolve Pharmacy Solutions[2] and Coordinated Care,[3] administer health insurance benefits to people in Washington under a contract with the State. Coordinated Care contracts directly with the State and collects premium payments from consumers. Coordinated Care contracts with Envolve to administer those health insurance benefits under the contract. Coordinated Care forwards payment to Envolve in return for those services. Coordinated Care pays the premiums tax referenced in RCW 82.04.320, above, in lieu of B&O tax.

The question here is whether Coordinated Care's payment of the premiums tax exempts Envolve Pharmacy from paying the B&O tax under the exemption in RCW 82.04.320.

We hold that Envolve qualifies for the exemption. The plain language of RCW 82.04.320 states that if a tax "is paid to the [S]tate"—by any entity, the statute does not limit who must make the payment—on "gross premiums" received "in respect to insurance business," then no other entity has to pay a B&O tax on those same "gross premiums" "in respect to insurance business." Coordinated Care

---

[2] Envolve Pharmacy Solutions was formerly known as US Script, Inc. Clerk's Papers at 649 (Decl. of Tricia Dinkelman).

[3] "Coordinated Care" refers to two corporate subsidiaries of Centene: (1) Coordinated Care and (2) Coordinated Care of Washington, which took over Coordinated Care's insurance contract with the State in 2014. Envolve's Suppl. Br. at 3 n.1.

paid that tax on the gross premiums at issue here. Under the plain language of

RCW 82.04.320, Envolve does not separately owe B&O taxes on those same

"gross premiums" "in respect to insurance business."

## BACKGROUND

A. History of the B&O tax exemption in respect to insurance businesses

Business entities generally pay Washington's B&O tax for the privilege of

conducting business in this state. RCW 82.04.220(1). The B&O tax is measured

by, among other things, gross receipts. *Id.*

But the legislature can direct businesses to pay other kinds of taxes in lieu of

that B&O tax. It has done just that with insurance businesses; it directs any person

conducting insurance business to pay a tax on "two percent of all premiums . . .

collected or received by the insurer . . . during the previous calendar year" instead

of paying the B&O tax. RCW 48.14.020(1)(a) (citing RCW 48.14.090); RCW

82.04.320 (the B&O tax "does not apply to any person in respect to insurance

business upon which a tax based on gross premiums is paid to the state").[4]

---

[4] The Department of Revenue appears to argue that Coordinated Care pays a tax based on premiums under RCW 48.14.0201 (rather than under RCW 48.14.020(1)(a)) and, thus, that the exemption applicable here is the one contained in RCW 82.04.322, rather than the one contained in RCW 82.04.320. We agree with the Court of Appeals that .320 has been the subject of this litigation through all the tax and court appeals. *Envolve Pharmacy Sols., Inc. v. Dep't of Revenue*, 25 Wn. App. 2d 699, 710 n.5, 524 P.3d 1066 (2023). We further agree with the Court of Appeals that we need not address this new argument to resolve this case. *Id.*

B. The Department of Revenue has historically exempted a secondarily contracted corporate affiliate (like Envolve) from the B&O tax as long as the primary corporate affiliate pays the premiums tax

Since at least 1990, the Department of Revenue (Department) had interpreted RCW 82.04.320—the tax exemption statute at issue in this case—to allow "Corporate Affiliate A" to contract its insurance business out to "Corporate Affiliate B" but to require only Affiliate A to pay the tax on gross premiums received—as long as Affiliate B is a "member[] of a group of companies majority owned or controlled by the same parent or owner." Clerk's Papers (CP) at 163 (Wash. Dep't of Revenue, Final Determination No. 88-311A, 9 Wash. Tax Dec. 293 (1990) (1990 Determination)).[5] The Department's 1990 Determination did not allow Affiliate B to escape B&O tax liability completely. *Id.* at 163-64. Instead, it limited the insurance-business-related exemption to activities or services performed by Affiliate B that "functionally related" to Affiliate A's insurance business. *Id.* "Functionally related," according to the Department, meant "incidental to accomplishing the insurance function." *Id.* at 163. And whether something is functionally related to insurance business "is a question of fact" determined "on a case by case basis." *Id.*

---

[5] The Department withdrew the 1990 Determination with its functionally related test in October 2019 and disqualified many of these administrative activities from the RCW 82.04.320 exemption. CP at 170-71 ("Interim guidance statement regarding the application of the insurance business exemption").

The Department also imposed limits on which activities were so functionally related that they qualify for this exemption. Those limits are based on (1) the relationship between the contracting entities, (2) the character of the service or activity performed, and (3) whether the activity is "independent[ly] entrepreneurial." *Id.* at 163-64.

First, with regard to the relationship between the contracting entities, the Department's 1990 Determination stated that the business seeking this statutory exemption must be a corporate affiliate of the business paying the premiums tax in lieu of B&O tax:

> Services provided by a corporation to an affiliate may be considered functionally related to the insurance business while the same services provided to an unrelated entity may not. Where the taxpayer performs services for an unrelated entity and receives payment, other than premiums paid under a contract of insurance, the activity will not be considered functionally related to the insurance business.

*Id.* at 163.

Second, with regard to the character of the activity performed, that 1990 Determination limited "functionally related" services to those "rendered in the regular course of the taxpayer's insurance business and relate exclusively to the affiliate's insurance business." *Id.* These include administrative services "such as accounting, personnel and data processing" as well as "[l]egal services provided to an affiliate that relate to its insurance business . . . ." *Id.* The Department provided

examples of nonfunctionally related services to which the exemption would not apply:

> If the affiliate is engaged in one or more business activities not related to the insurance business, services rendered to the affiliate are taxable to the extent they relate to other business activities. For example, accounting and data processing services provided to an affiliate whose sole activity is providing financial counseling to individuals would not be considered functionally related to the insurance business.

*Id.* at 163-64.

Third, the Department's 1990 Determination excluded "independent entrepreneurial activities" from the definition of functionally related activities. *Id.* at 164. Independent entrepreneurial activities "involve the active and direct conduct of a trade or business and result in sales of services to unrelated parties." *Id.* The Department specifically disqualified "services rendered to employees" from the functionally related test because of their entrepreneurial nature:

> [T]he operation of a company sponsored cafeteria where meals are purchased by employees is an activity not functionally related to the insurance business. Charges for legal services provided to employees of either the taxpayer or an affiliate for advice on matters of a personal nature are also not functionally related to the insurance business. Whether an activity is operated at a profit is irrelevant.

*Id.*

The Department concluded its 1990 Determination by applying the functionally related test to insurance-business-related exemptions claimed by a parent corporation and its affiliates. *Id.* It found that the Department had wrongly

assessed B&O taxes on the work of affiliates that was functionally related to the parent corporation's insurance business:

> The assessment in question involves expense allocations to affiliates for services performed by the taxpayer's home and divisional offices. These services include data processing, accounting, legal, personnel, education and administration rendered to the taxpayer's affiliates in the course of its insurance business. Each of the taxpayer's affiliates is engaged in the insurance business to which these services are functionally related. . . . The assessment of B&O tax on expense allocations to affiliates is reversed.

*Id.*

Thus, the Department has historically exempted a secondarily contracted corporate affiliate from the B&O tax as long as the primary corporate affiliate pays the premiums tax. In this case, Envolve is the secondarily contracted corporate affiliate seeking to benefit from the Department's historical policy.

C. The State contracts with private entities (like Coordinated Care) to deliver statutorily required health insurance benefits

The legislature requires the State to offer health insurance to people in Washington and delegated the power to administer state-sponsored health insurance programs to the Washington State Health Care Authority (HCA). RCW 70.47.002, .005, .010. The HCA may contract with private entities to administer these health insurance benefits. CP at 375 (managed care contract (HCA Contract)) ("This Contract is between [HCA] and the Contractor . . . and is governed by chapter 70.47; 74.09; and [Title] WAC 182.")). The contracted entities must in turn

administer health insurance that complies with Washington's health insurance regulations promulgated by the Office of the Insurance Commissioner. Chs. 284-43, -170 WAC.

According to the Association of Washington Healthcare Plans, this type of corporate-affiliate contracting described in the 1990 Determination is common in the health insurance industry in Washington because of how Washington taxes insurance premiums:

> [C]ompanies in the insurance industry . . . have relied on [the 1990 Determination] in the management of their businesses. Efficiency is an imperative in insurance, because premium income is subject to state regulation and at the same time must be set to provide an actuarially sound basis, together with the company's capital, for meeting expected claims.
>
> Insurance businesses typically offer coverage in multiple states, and often do so via a separate insurance entity in each state because the states regulate insurance independently. In this context, the only feasible way for an insurance business to share common expenses (e.g., claims processing, customer support, actuarial services, provider network management, investments, etc.) is to house them in a non-insurance entity that contracts with all of its insurance plan entities.

Amicus Curiae Br. of Ass'n of Wash. Healthcare Plans at 12-13.

Thus, the State contracts with private entities to deliver statutorily required health insurance benefits. The private entity with which the State contracted in this case is Coordinated Care.

D. In 2012, Centene Corporation, parent company to Coordinated Care and Envolve, sought the Department's guidance on whether Coordinated Care could contract out its obligation under the HCA Contract to Envolve without Envolve incurring additional tax liability

As explained above, Coordinated Care, a subsidiary of Centene, has contracted with the HCA to administer health insurance benefits in Washington. CP at 375. It did so in March 2012. *Id.* at 375-492 (HCA Contract). Coordinated Care operates as Centene's contracting entity in the State of Washington and has no employees or infrastructure of its own to administer health insurance benefits. *Id.* at 341 (2013 letter ruling).

In May 2012, Coordinated Care contracted with Envolve, another Centene subsidiary, to administer the health insurance benefits required by the HCA Contract—including pharmacy benefit management services (PBM services). *Id.* at 586-636 (PBM Agreement). Coordinated Care would collect any insurance premiums and forward a percentage of the premiums to Envolve as payment for its services. *Id.* at 598. Coordinated Care pays the annual premiums tax. *Id.* at 637-48 (Coordinated Care's State of Washington e-tax forms).

The PBM Agreement required Envolve to provide a mixture of administrative and PBM services—required by state regulation of insurance businesses—such as

- Establish and maintain provider networks "in a manner that is sufficient in numbers and types of providers and facilities to assure that … all health plan

services provided to enrollees will be accessible in a timely manner appropriate for the enrollee's condition," WAC 284-170-200(1);

- Credential participating providers, WAC 284-170-411;
- Process claims from providers, WAC 284-170-431, -470;
- Reimburse healthcare providers for valid claims in a timely manner, WAC 284-170-431, -470;
- Comply with requirements related to the establishment and maintenance of a formulary, WAC 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 to 5110, -5640(6)(f);
- Develop and maintain a drug utilization review program, WAC 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;
- Charge premiums based on estimates of prudently incurred expenses, WAC 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(2)(b).

Envolve's Suppl. Br. at 27 (citing CP at 586-636, 653-54).

Envolve initially started paying B&O taxes under the "service and other" reporting category in 2012. CP at 23.[6] But in December 2012, Centene sought a letter ruling from the Department on whether any of the subsidiaries with which Coordinated Care affiliated for insurance business could benefit from Coordinated Care's payment of the insurance premiums tax by accessing the exemption in RCW 82.04.320. *Id.* at 340.

The Department responded in October 2013 and—relying on its 1990 Determination—ruled that the answer was yes: Coordinated Care's affiliates do not have to pay the premiums tax or the B&O tax on any activity that was

---

[6] Envolve filed and paid the following in B&O taxes: $46,680 in 2012, $28,751 in 2013, $130,873 in 2014, and $85,052 in 2015. CP at 1007-1010 (annual excise tax detail by line code).

"functionally related" to Coordinated Care's insurance business as long as Coordinated Care paid its premiums tax. *Id.* at 336 (2013 letter ruling). But the contracted affiliate would have to pay B&O taxes on any activity *not functionally related* to Coordinated Care's insurance business. *Id.* at 338.

E. Based on the Department's 2013 letter ruling, Envolve sought a refund— but the Department denied it, audited Envolve, and assessed over $3 million in back taxes dating back to 2010 against Envolve

Based on the 2013 letter ruling, Envolve filed amended B&O tax returns requesting about a year's worth of refunds totaling $73,263. CP at 24.[7] It claimed that all the services it provided to Coordinated Care were functionally related to Coordinated Care's insurance business and that Coordinated Care had paid the premiums tax on those receipts. *Id.*

The Department denied Envolve's request. It explained that Envolve's administrative services were functionally related to Coordinated Care's insurance function, but that its other services (which the Department seems to characterize as nonadministrative)—like maintaining a network of pharmacies, providing mail-order pharmacy services, and selecting network pharmacies—were not functionally related. *Id.*

---

[7] Between 2012 and 2013, Envolve paid $75,431 in B&O taxes in the "service & other" category. *Id.* at 1007-1008.

After denying Envolve's refund, the Department audited Envolve for the period January 2010 through June 2015 and made two assessments of unpaid taxes "on amounts [Envolve] had received from Coordinated Care and paid out to third party pharmacies." *Id.* The assessment totaled "$3,203,762 in unpaid B&O taxes, plus interest, and a 5 percent assessment penalty." *Id.* The audits noted that Envolve might be able to exclude some of those payments it received under the "functionally related" criteria, but it needed to prove which funds were for which purposes. *Id.* at 23-24.

Specifically, the audits asserted tax liability on amounts Envolve had received from Coordinated Care and paid to third-party pharmacies because "'amounts received by an affiliate for providing *actual health care services* are not exempt because they are not incidental to accomplishing Coordinated Care's insurance business activities.'" *Id.* at 23 (emphasis added) (citing 2013 letter ruling). The Department made this assertion despite the fact that state regulations actually require insurance companies to perform quality assurance, risk control, and other services that are part of the insurance business, but certainly have a positive impact on actual health care services. *E.g.*, WAC 284-170-411 (requiring insurers to credential providers to ensure medical care quality), -470 (requiring insurers to process "pharmacy [billing] claims . . . in a timely manner").

PROCEDURAL HISTORY

Envolve sought review by the Department's Administrative Review and Hearings Division. CP at 295 (Determination No. 17-0048). The division upheld the assessments, agreeing with the Department that Envolve was engaged in some activities that were functionally related to insurance and some that were not. *Id.* at 304.

Envolve appealed to the Board of Tax Appeals, arguing that nearly all the amounts it received were functionally related to Coordinated Care's insurance business under both the 2013 letter ruling and the 1990 Determination. *Id.* at 11, 16 (Board's Corrected Final Decision). The Department and Envolve filed cross motions for summary judgment. *Id.* at 11.

The Board ruled that Envolve was not entitled to avoid B&O tax on all its PBM services income. *Id.* It determined that Envolve was entitled to rely on the department's precedent, and that any activities that were "functionally related" to insurance qualified as "insurance business" activities exempt from B&O tax under RCW 82.04.320. *Id.* at 25-26. But the Board found that Envolve also provides "pharmacy services" that it treated as "health care services" outside the definition of insurance and not covered by the functionally related test. *Id.* at 26.

Envolve petitioned for review in King County Superior Court. *Id.* at 1-7. The Superior Court reversed the Board's order. *Id.* at 1435-42 (Ord. Reversing Bd. of

Tax Appeals' Corrected Final Decision). It ruled that the Department's prior administration of the statute—using the functionally related test—was consistent with the statutory language and that Envolve's activities constituted insurance business activities exempt under RCW 82.04.320. *Id.* at 1439-41. That court ordered the Department to refund the B&O tax Envolve paid on its PBM services income. *Id.* at 1441.

The Department appealed, and the Court of Appeals affirmed. *Envolve*, 25 Wn. App. 2d 699. Relying on RCW 82.04.320's plain language, the appellate court held that because all of Envolve's PBM services "are required under the HCA contract and, if performed by Coordinated Care, would be considered insurance business activities, it is unreasonable to claim these actions are not at least functionally related to the insurance business." *Id.* at 713. Accordingly, Envolve owed no B&O taxes and was entitled to a full refund. *Id.* at 716.

The Department petitioned for review of the Court of Appeals' decision, which we granted. *Envolve Pharmacy Sols., Inc. v. Dep't of Revenue*, 1 Wn.3d 1018 (2023).

ANALYSIS

I.   RCW 82.04.320's plain language exempts Envolve from B&O taxation because Coordinated Care paid the premiums tax on Envolve's work "in respect to" insurance business—and that's all that .320 requires

The key issue before this court is whether RCW 82.04.320's tax exemption applies to "insurance business" performed by one corporate affiliate for another corporate affiliate, where the other corporate affiliate pays the full premiums tax on that book of business.

This requires interpreting the statute, which is a question of law that we review de novo. *Durant v. State Farm Mut. Auto. Ins. Co.*, 191 Wn.2d 1, 8, 419 P.3d 400 (2018) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). We begin our statutory interpretation process—with the goal of figuring out the legislature's intent—by starting with the plain language of the statute, in context. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).[8]

---

[8] The Department argues that Envolve should pay taxes because it is a business (thus subject to the B&O tax) and it is a separately taxable entity from Coordinated Care. Dep't's Suppl. Br. at 13-14 (citing *Armstrong v. State*, 61 Wn.2d 116, 120, 377 P.2d 409 (1962), 16-18 (citing *Rena-Ware Distribs., Inc. v. State*, 77 Wn.2d 514, 463 P.2d 622 (1970)). To be sure, it is generally true that no business should remain untaxed and that creative corporate organization does not necessarily avoid applicable taxes. But that general principle must give way to the plain language of a statute that explicitly exempts a particular entity from a particular tax. *See State v. James-Buhl*, 190 Wn.2d 470, 474, 415 P.3d 234 (2018) ("If the plain language is unambiguous, the court must give it effect" (citing *State v. Armendariz,* 160 Wn.2d 106, 110, 156 P.3d 201 (2007))).

We derive "legislative intent solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole." *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 196 Wn.2d 1, 7-8, 468 P.3d 1056 (2020) (citing *First Student, Inc. v. Dep't of Revenue*, 194 Wn.2d 707, 710, 451 P.3d 1094 (2019)). We use traditional rules of grammar when discerning a statute's plain language. *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010) (citing *In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 838-39, 215 P.3d 166 (2009)). When a statute's plain language is unambiguous—meaning it is subject to only one reasonable interpretation—we will not resort to other interpretive tools such as legislative history. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 458, 430 P.3d 655 (2018) (citing *State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013)).

> A. RCW 82.04.320's text applies broadly to "any person," engaged in any work "in respect to" "insurance business," and it exempts such person from B&O tax if its business is business *"upon which a tax based on gross premiums is paid"*

The statute at issue, RCW 82.04.320, exempts from B&O taxation "any person in respect to insurance business upon which a tax based on gross premiums is paid to the state." We begin with this plain language.

Let's start with the phrase "any person." The word "person" is very broad: the legislature has defined "person" to include "corporations," the types of entities at issue here. RCW 82.04.030; *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 149 n.7, 3 P.3d 741 (2000). The word "any" modifies the word "person." The use of the word "any" enlarges, rather than restricts, the category of "persons" to which the exemption applies. *See State v. Westling*, 145 Wn.2d 607, 611-12, 40 P.3d 669 (2002) (granting word "any" a broad construction meaning "every" and "all" (citing *State v. Smith,* 117 Wn.2d 263, 271, 814 P.2d 652 (1991))).

Thus, the phrase "any person" indicates that as long as a qualified entity performs activity "*in respect to* insurance business," that entity can qualify for the exemption. RCW 82.04.320 (emphasis added). It seems irrefutable that Envolve fits into the category of "any person." RCW 82.04.030.

Next, the prepositional phrase "in respect to" clarifies that "any person" qualifies for the exemption for its activities respecting or regarding "insurance business." RCW 82.04.320. *Webster's Dictionary* defines "in respect to" as "in relation to : with regard to : as respects." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1934 (2002); *see also id.* at 1916 (defining "relation" as "REFERENCE" or "RESPECT" "used esp[ecially] in the phrase *in relation to*").

17

In short, the phrase "any person in respect to insurance business" means that an entity must perform activities that relate to "insurance business" to qualify for the exemption.

Envolve clearly fits into that category of performing activities in respect to, or in regard to, "insurance business." That's what the list above shows. *See supra* at 9-10. That's what the HCA's contract with Coordinated Care shows. *E.g.*, CP at 416 ("HCA shall pay a monthly premium for each enrollee in full consideration of the work to be performed by [Coordinated Care] under this Contract."). That's what Coordinated Care's contract with Envolve shows. *E.g.*, CP at 589 (requiring Envolve to do eligibility and claims processing). And that's how the Department always used to interpret this phrase, before this case. *E.g.*, CP at 183-84 (citing *Factory Mut. Eng'g Ass'n v. Dep't of Revenue*, noted at 70 Wn. App. 1057, slip op. at 11-12 (1993)).[9]

The remaining question is whether the facts that Coordinated Care paid a premiums tax on this business that it forwarded to Envolve and that Envolve did

---

[9] GR 14.1(a) allows parties to cite unpublished opinions filed on or after March 1, 2013. GR 14.1(c) says that appellate courts "should not, *unless necessary for a reasoned decision*, cite or discuss unpublished opinions in their opinions." (Emphasis added.) This particular decision, however, was made part of the record in this case at the trial court level and has been part of that record since. CP at 183-84.

not pay a separate premiums tax on this insurance-related business itself changes the result.

Under the plain language of the statute, the answer must be no. The legislature did not say that the insurance business doing the insurance-related work at issue must itself pay a premiums tax on that business to qualify for that exemption. Instead, the legislature used the passive voice to say that a premiums tax must have been paid on this business—without describing by whom—for the tax exemption to kick in. *Dean v. United States*, 556 U.S. 568, 572, 129 S. Ct. 1849, 173 L. Ed. 2d 785 (2009) (passive voice indicates that what matters is "whether something happened—not how or why it happened" (citing *Watson v. United States,* 552 U.S. 74, 81, 128 S. Ct. 579, 169 L. Ed. 2d 472 (2007))). The statute does not specify that each entity engaged in a given amount of "insurance business" must pay the premiums tax, it states only that *an entity* must pay it. And the statute refers to the premiums tax that some entity must pay as "a tax," not multiple taxes.

The only question left is what qualifies as "insurance business." In its 1990 Determination, the Department defined insurance business very broadly as "specific business activity undertaken by insurers," "those activities specifically regulated under Title 48 RCW [insurance statutes]," and any "functionally related" work as well. CP at 162-63. An applicable statute provides an even broader

19

definition. Under RCW 82.04.140, the statute providing definitions applicable to the B&O tax chapter, "business" includes "all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly."

Thus, a straightforward reading of the plain language of RCW 82.04.320 shows that it exempts from B&O taxation any amount of "insurance business" on which an entity paid "a" premiums tax. Textually, that means *any* entity—the statute contains no language limiting it to only the discrete entity that paid the premiums tax.

In this case, Coordinated Care paid that RCW 82.04.320 premiums tax in lieu of B&O tax. Under the plain language of that statute, Envolve doesn't have to pay it again.

### B. Amendments to RCW 82.04.320 support this broad reading

As discussed above, we begin with the plain language of the statute in context. Part of examining the "context" of a statute is looking at that statute's development over the years. *Associated Gen. Contractors v. State*, 2 Wn.3d 846, 857, 544 P.3d 486 (2024) (quoting *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 440, 395 P.3d 1031 (2017)).

RCW 82.04.320's development over the years supports the interpretation described above. In 1933, the legislature enacted the occupation tax, [t]he

forerunner to the B&O tax. The legislature explicitly exempted from that tax "[t]he following persons . . . [*i*]*nsurance companies* which pay to the State of Washington a tax upon gross premiums." LAWS OF 1933, ch. 191, § 4(2), at 879 (emphasis added). This old statute's use of plain language exempting "[i]nsurance companies" from B&O taxation shows that the legislature knows how to exempt only such companies if it wants to.

But in 1935, the legislature replaced the occupation tax with the B&O tax and amended RCW 82.04.320. Most notably, the legislature changed its language from exempting only "insurance companies" to language exempting "[a]ny person in respect to insurance business upon which a tax based on gross premiums is paid to the State of Washington . . . ." LAWS OF 1935, ch. 180, § 11(c) at 718. In other words, the legislature intentionally changed its narrow exemption for "insurance companies" to the current, broader, passive voiced, far-reaching exemption applicable to "any person" for work on "insurance business upon which *a* tax based on gross premiums is paid . . . ." RCW 82.04.320 (emphasis added).

This broader language remains in place to this day. *Compare* former RCW 82.04.320 (the 1935-2021 statute stating, "This chapter shall not apply to any person in respect to insurance business upon which a tax based on gross premiums is paid to the state"), *with* RCW 82.04.320(1) (current statute stating, "[T]his

chapter does not apply to any person in respect to insurance business upon which a tax based on gross premiums is paid to the state").

As the Court of Appeals noted in *Factory Mutual Engineering Ass'n,* "The Legislature clearly knew how to limit the exemption to insurance companies; it did so in 1933. It did not do so in 1935." CP at 183-84 (citing *Factory Mut. Eng'g*, slip op. at 11-12).

Once again, in this case, Coordinated Care paid that RCW 82.04.320 premiums tax in lieu of the B&O tax. Under the plain language and historical context of that statute, Envolve doesn't have to pay it again.

II.     Envolve is entitled to a full exemption, not just the partial exemption that the Department granted

The only remaining issue is how much of Envolve's work is exempt from the B&O tax. Under RCW 82.04.320, the answer must be based on whether Envolve's work was "in respect to" "insurance business."

Starting with the "functionally related" test—which clearly applies in this case[10]—"functionally related" means "incidental to accomplishing the insurance

---

[10] As noted, the Department withdrew its 1990 Determination and its functionally related test. But the test still applies here because "we will never defer to ad hoc agency determinations adopted during the course of litigation on the very topic of that litigation." *Alaska Airlines, Inc. v. Dep't of Lab. & Indus.*, 1 Wn.3d 666, 683, 531 P.3d 252 (2023). As the Court of Appeals correctly noted, "Envolve ha[s] the right to have its tax liability determined using that standard for the tax periods at issue." *Envolve*, 25 Wn. App. 2d at 712 n.7 (quoting RCW 82.32A.020(2)).

function." CP at 163 (1990 Determination). As noted above, whether Envolve's activity is functionally related to Coordinated Care's insurance function depends on (1) the relationship between the contracting entities, (2) the character of the service or activity performed, and (3) whether the activity is "independent[ly] entrepreneurial." *See supra* at 5-6. Functionally related activities include administrative services "such as accounting, personnel and data processing." CP at 163.

Here, Envolve performed all of its work pursuant to a contract with Coordinated Care, and Coordinated Care contracted all of that work out to Envolve because Coordinate Care had a contract with the State to administer health insurance in Washington. And just about everything in the contracts between the State and Coordinated Care, and between Coordinated Care and Envolve, were activities that the State requires state health insurers to perform. *E.g.*, WAC 284-170-200(1), -411, -431, -470; WAC 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 to 5110, -5640(6)(f), -2020, -6040(2)(b). In other words, Envolve's work—like Coordinated Care's work—is the work that state statutes and regulations define as health insurance work. It necessarily follows that Envolve qualifies for the same deduction for that health insurance work as Coordinated Care does.

So the real question is whether Envolve performed any "actual healthcare services"—because only insurance work is covered by the exemption, not actual

health care services. The Department characterizes Envolve's work for Coordinated Care as "health care services" to conclude that the exemption doesn't apply to Envolve. Dep't's Suppl. Br. at 22.

We disagree. Envolve did not perform any actual health care services. All of Envolve's activities involved quality assurance, benefit management, risk management, claims processing, subscriber and provider reimbursement, and cost control measures mandated by statute or regulation. These are all "administrative" activities and certainly central to the insurance function.

The Department's contrary assertion that these activities—such as quality assurance and risk management work—constitute health care services rather than insurance-related services reflects a misunderstanding of the health insurance business. *See* RCW 70.47.010(2)(b)-(c) (purpose of state-assisted health insurance is to expand *coverage* for health care services while lowering health care costs); *cf. Kueckelhan v. Fed. Old Line Ins. Co.*, 69 Wn.2d 392, 420, 418 P.2d 443 (1966) ("The management of an insurance company must operate in such a manner, and so conduct its business, as to reduce to a minimum the risk of loss to the policyholders.").

Further, Envolve *does not* provide actual health care services, under any definition, counter to what the Department argues. Under RCW 48.44.010(10), health care services include "medical, surgical, dental, chiropractic, hospital,

optometric, podiatric, pharmaceutical, ambulance, custodial, mental health, and other therapeutic services." Under RCW 48.46.020(4), "'Comprehensive health care services' means basic consultative, diagnostic, and therapeutic services rendered by licensed health professionals together with emergency and preventive care, inpatient hospital, outpatient and physician care, at a minimum, and any additional health care services offered by the health maintenance organization." Under RCW 70.02.010(15), "'Health care' means any care, service, or procedure provided by a health care provider: (a) To diagnose, treat, or maintain a patient's physical or mental condition; or (b) That affects the structure or any function of the human body."

None of Envolve's activities meet any of these definitions. Envolve does not treat any physical or mental health condition or dispense any drugs. It reimburses providers for those services, monitors usage and efficacy, and explains benefits to subscribers when necessary. This is insurance business, not health care services.

Accordingly, Envolve is exempt from the B&O tax under the Department's own "functionally related" test because Coordinated Care paid the premiums tax on Envolve's insurance-related business. Envolve was created to conduct Coordinated Care's insurance business for efficiency purposes. The Department should not be surprised that *everything Envolve does* is functionally related to Coordinated Care's insurance business. That's the reason Envolve exists.

25

This result is probably even clearer if we use the test demanded by the language of the applicable statute, that is, whether Envolve's work is done "in respect to" "insurance business." RCW 82.04.320. The statutory language does not demand that the "insurance work" be in respect to non-risk-avoidance, or non-quality-control, or non-PBM network set up and maintenance "insurance business" work in order to be covered by the exemption. Certainly, the work that Coordinated Care contracted with Envolve to perform—work that covers Coordinated Care's insurance duties as set forth in a long series of regulations— must be considered in respect to, or in regard to, or in relation to, insurance. The applicable state regulations place that work squarely within the duties required of health insurers.

CONCLUSION

The legislature previously enacted a statute that exempted from B&O taxation all "[i]nsurance companies." LAWS OF 1933, ch. 191, § 4(2), at 879. In 1935, the legislature replaced that with a statute that exempted from B&O taxation not just "[i]nsurance companies," but "any" company or "person" that performs work in regard to—"*in respect to*"—insurance business, as long as *someone* has paid "*a* tax" on that "insurance business['s] … gross premiums." RCW 82.04.320. That language remains on the books to this day.

Under that statute's plain language and historical context, (1) Envolve meets the broad, inclusive, statutory definition of "any person," (2) Envolve performed work that was, by the clear terms of its contract, "in respect to [Coordinated Care's] insurance business," and (3) Envolve's work for Coordinated Care constituted "business" upon which "*a* [premiums] tax" was fully paid (by the party with which Envolve contracts, Coordinated Care).

That is all that the plain language of the applicable statute requires for Envolve to gain the benefit of this statutory exemption. And the statutory exemption covers all of Envolve's work "in respect to insurance business," not just the very limited portions of that work carved out by the Department.

We affirm the Court of Appeals' decision affirming the Superior Court's decision to reverse the Board of Tax Appeals. We remand for further proceedings consistent with this opinion.

_____
Gordon McCloud, J.

WE CONCUR:

_____


_____
Johnson, J.

_____
Madsen, J.

_____
Whitener, J.

_____
Stephens, J.

_____

No. 101845-2


GONZÁLEZ, C.J. (dissenting) — This case asks a simple question: Did the legislature intend to exempt companies like Envolve Pharmacy Solutions from both the business and occupation (B&O) tax typically imposed on businesses and the premiums tax typically imposed on insurance companies?  Given the advice that the Department of Revenue gave the taxpayer's parent company, I conclude that Envolve is entitled to the exception for some of its work on behalf of an insurance company during the taxing period at issue.  Given the basic structure of our tax code, the general rule that tax exceptions are construed narrowly, and the specific language of the exception at issue, I conclude Envolve is not otherwise exempt from state taxes. Accordingly, I respectfully dissent.

BACKGROUND

From our earliest days as a state, insurance companies have paid a tax on premiums. Alfred Harsch, *The Washington Tax System—How It Grew*, 39 WASH. L. REV. 944, 952-53 (1965) (citing LAWS OF 1889-90, ch. 18, § 47, at 547 (codified as amended at RCW 48.14.020)).  During the Great Depression, our state imposed a business and occupation tax on "every person . . . engaging in business activities." LAWS OF 1935, ch. 180, § 4 (codified as amended at RCW 82.04.220).  Perhaps

because insurance companies were already paying a state tax, the legislature exempted "[a]ny person in respect to insurance business upon which a tax based on gross premiums is paid to the State of Washington," with some exceptions. LAWS OF 1935, ch. 180, § 11(c).

Decades later, an insurance company that paid a premiums tax argued that it was categorically exempted from the B&O tax for all of its income-generating activity, including money received for performing services for its affiliates. Clerk's Papers (CP) at 159 (Wash. Dep't of Revenue, Determination No. 88-311A, 9 Wash. Tax Dec. 293 (1990), *withdrawn by* Excise Tax Advisory 3133.2019 (Oct. 2, 2019)). The department disagreed, deciding that it was "unreasonable to conclude that the legislature intended to allow an insurance company to escape taxation on business which is unrelated to its insurance business." *Id.* at 162. The company was, however, allowed a limited exception for those "activities which are functionally related to the taxpayer's conduct of its insurance business [because those] are not subject to the [B&O] tax." *Id.* at 163.

The department later withdrew 9 WTD 293, stressing that the exemption in RCW 82.04.320 applied only to entities that received premiums and paid a premiums tax. *Id.* at 170-71. It also concluded that 9 WTD 293 had erred in adopting the "functionally related" test. *Id.*

Meanwhile, a new type of business has arisen: pharmacy benefit managers. Pharmacy benefit managers "serve as intermediaries between prescription-drug plans

and the pharmacies that beneficiaries use." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83-84, 141 S. Ct. 474, 208 L. Ed. 2d 327 (2020); *see also* RCW 48.200.020(14)(a). Among other things, they work with pharmacies to determine beneficiaries' coverage and co-pay obligation, reimburse the pharmacy for the cost of the drug, and in turn are reimbursed by beneficiaries' prescription drug plans. *Pharm. Care*, 592 U.S. at 84; RCW 48.200.020(14)(a). The amount a pharmacy benefit management service "'reimburses' a pharmacy for a drug is not necessarily tied to how much the pharmacy paid to purchase that drug from a wholesaler." *Pharm. Care*, 592 U.S. at 84. Instead, the pharmacy benefit managers contract both with the pharmacies for the amount it will reimburse the pharmacy and with the insurance plan for the amount that will be reimbursed. *Id.* "That difference generates a profit." *Id.*

Envolve Pharmacy Solutions and Coordinated Care of Washington are both subsidiaries of the Centene Corporation, a multiline health care enterprise. Coordinated Care is a health management organization that pays taxes on premiums. Envolve provides Coordinated Care pharmacy benefit management services such as claims processing; eligibility management; benefits management; utilization management; pharmacy network management; call center services; network pharmacy license verification; quality improvement; and appeals, complaints, and claims administration; among other things. In addition to the direct compensation Envolve receives from Coordinated Care, Envolve keeps some of the rebates it gets from pharmaceutical companies.

3

The Department of Revenue concluded that under 9 WTD 293, Envolve was entitled to a B&O tax exemption for "providing services that are functionally related to Coordinated Care's insurance business." CP at 1020. The department ultimately allowed Envolve to exempt the portion of its income it received from Coordinated Care for "administration of eligibility management services, claim processing, claims adjudication, benefit coordination, coverage verification, and recordkeeping services," but not for "maintaining a network of pharmacy contacts; credentialing of network pharmacies; selecting network pharmacies; drug utilization review services; quality improvement; managing the prescription drug formulary; collecting rebates from pharmaceutical manufacturers; and maintaining information data systems," as these services related to providing health care, not insurance. CP at 303.

ANALYSIS

As we noted long ago, "the legislature intended to impose the business and occupation tax upon virtually all business activities carried on within the state." *Time Oil Co. v. State*, 79 Wn.2d 143, 146, 483 P.2d 628 (1971) (citing *Reynolds Metals Co. v. State*, 65 Wn.2d 882, 885, 400 P.2d 310 (1965)); *see also* RCW 82.04.220(1) ("There is levied and collected from every person . . . a tax for the act or privilege of engaging in business activities."). When construing tax statutes, "taxation is the rule and exemption is the exception, and where there is an

4

exception, the intention to make one should be expressed in unambiguous terms." *Columbia Irrig. Dist. v. Benton County*, 149 Wash. 234, 240, 270 P. 813 (1928).

The B&O tax "does not apply to any person in respect to insurance business upon which a tax based on gross premiums is paid to the state." RCW 82.04.320(1); *see also* RCW 82.04.322 (applying a similar exemption to health maintenance organizations and health care services contractors, such as Coordinated Care, "in respect to premiums or prepayments that are taxable under RCW 48.14.0201").

The majority concludes that this exception applies because, in its view, Envolve does business with an insurance business that pays a tax based on premiums. Read in context of everything the legislature has said and in light of the way these statutes were enacted, I disagree.

I conclude that the legislature simply intended to avoid taxing insurance businesses twice on the same income. *See* LAWS OF 1935, ch. 180, §§ 4, 11(c) (creating the modern B&O tax and establishing a limited exclusion from it for insurance businesses that pay a tax based on premiums); LAWS OF 1993, ch. 492, §§ 301, 303 (responding to the health care crisis by recognizing new types of health care plans and establishing a limited exclusion from B&O tax for these plans that pay a tax based on premiums); *Armstrong v. State*, 61 Wn.2d 116, 122, 377 P.2d 409 (1962) (recognizing the legislature's desire to avoid double taxation).

5

A taxpayer who pays the premiums tax under RCW 48.14.020 is not required to pay B&O tax on those premiums under RCW 82.04.320. Similarly, a taxpayer who pays the premiums and prepayments tax under RCW 48.14.0201 is not required to pay B&O tax under RCW 82.04.322.

Nothing in the relevant statutes or the overarching statutory schemes suggests the legislature intended to allow a taxpayer who did *not* pay a tax based on premiums under chapter 48.14 RCW to avoid taxes under chapter 82.04 RCW simply because it did business with an insurance company. That would be inconsistent with the fundamental principle that "[t]here is levied and collected from every person . . . a tax for the act or privilege of engaging in business activities" in Washington. RCW 82.04.220(1).

I recognize that read in isolation, there is language in the now withdrawn revenue determination that suggests an insurance company's affiliate that does not pay a premiums tax is entitled to the exception to the same extent that an insurer that does pay the tax would be. CP at 163. But given the factual context that the question was presented, I conclude that the determination properly applies only to taxpayers, like the taxpayer at issue in the determination, who themselves paid a tax based on premiums.

Under the letter ruling Centene received, Envolve is entitled to an exemption for "providing services that are functionally related to Coordinated Care's insurance

business." CP at 1020. Envolve contends that *everything* it does under its contract with Coordinated Care is functionally related, incidental to, and relates exclusively to Coordinated Care's insurance business. Again, I disagree.

Envolve's approach violates the precept that tax exceptions are to be narrowly construed. I also see no meaningful limiting principle to Envolve's—or the majority's—approach. Under their approach, *any* activity necessary to the performance of an insurance, health maintenance organization, or health care services contractor contract would be exempt from B&O tax so long as some taxpayer somewhere paid a tax based on premiums or prepayments. If the legislature had meant that, it would have said so clearly.

Aside from Envolve's broad argument that all of its relevant work is functionally related to, incidental to, and relates exclusively to its work with Coordinated Care, Envolve does not identify which activities should have been excluded from the B&O tax under the letter ruling. No error is obvious to me.

I recognize that since these statutes were enacted, more and more health care is being effectively provided by insurance companies. That does not turn health care into insurance. Maintaining a network of pharmacy contacts, selecting and credentialing network pharmacies, drug utilization review services, and managing the prescription drug formulary appear to be substantive, consumer-oriented services that are not functionally related or incidental to the insurance function. Similarly, quality

7

*Envolve Pharmacy Sols., Inc. v. Dep't of Revenue*, No. 101845-2 (González, C.J., dissenting)

improvement and collecting rebates from pharmaceutical manufacturers are not obviously part of the insurance business unless all health care is.

In my view, Envolve is not entitled to the full exception it seeks. As the majority concludes otherwise, I respectfully dissent.

González, C.J.

Yu, J.

Montoya-Lewis, J.

Rumbaugh, J.P.T.

8